UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BIRGITT N. MORRIS, | No. ED CV 05-675-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 27, 2005, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on August 24, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 23, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 6, 1972. [See Administrative Record ("AR") at 11, 54.] She attended high school through the twelfth grade, and has past work experience as, among other things, a cashier, assistant manager, bartender, and mental health technician. [AR at 62, 67, 73-80, 401.]

On January 27, 2003, plaintiff filed her application for Disability Insurance Benefits, alleging that she has been unable to work since November 15, 2002, due to generalized anxiety disorder, severe depression, bipolar disorder and panic attacks. [AR at 10, 53, 54-56, 60-61.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on February 3, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. A lay witness also testified for plaintiff. [AR at 392-428.]

On April 8, 2005, the ALJ determined that plaintiff was not disabled. [AR at 10-16.] When the Appeals Council denied review on June 2, 2005 [AR at 4-6], the ALJ's decision became the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

The ALJ found that plaintiff met the insured status requirements of the Act through September 30, 2003. [AR at 11.] Applying the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 11.] At steps two and three, the ALJ concluded that plaintiff has the severe impairments of "a mood disorder with anxiety; migraine headaches; and status post abdominal surgeries with residual pain," but that the impairments do not meet or equal any impairment in the Listing. [AR at 11.] At steps four and five, the ALJ concluded that plaintiff is not able to perform her past relevant work, but has the residual functional capacity ("RFC")[1] to perform unskilled[2] sedentary work.[3] He then concluded that the Medical-Vocational Guidelines set forth at 20 C.F.R.

---

[1]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   "The basic mental demands of...unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." Social Security Ruling ("SSR") 85-15, at 4. Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3]   Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary

Pt. 404, Subpt. P, App. 2 compel a finding of not disabled. [AR at 13-15.] Accordingly, the ALJ found plaintiff not disabled. [AR at 10-16.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to (1) properly consider the opinions of plaintiff's treating physicians; (2) consider the lay witness testimony of plaintiff's husband; and (3) obtain vocational expert testimony. For the reasons explained below, the Court agrees with plaintiff in part, and remands this matter for further proceedings.

**A.     LAY WITNESS TESTIMONY**

Plaintiff asserts that the ALJ did not properly consider the lay evidence provided by her husband, James Morris. Mr. Morris testified that plaintiff has "great difficulty with concentration. . . . She has problems remembering things. She can't concentrate when she's sometimes making dinner or trying to do a task in the kitchen or something." He also indicated that plaintiff is physically unable to do a lot of tasks around the house. [AR at 423.] In addition, plaintiff's problems with "drifting off" have "gotten bad" over the last year-and-a-half. [AR at 424.] Mr. Morris also testified that plaintiff is "very fatigued. She will actually fall asleep in the middle of doing things, in the middle of eating dinner. She will be standing at the counter starting a task, if she's doing something, then she'll lean over and all of a sudden pass out over the counter." [AR at 425.] She also has "extensive pain. . . . She's been seeing someone for pain management for over a year-and-a-half now because of dealing with this pain that'll drop her to her knees or make it uncomfortable to stand, sit, walk." [AR at 426.]

---

in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a). Specifically, the ALJ concluded that plaintiff "has the ability to lift/carry ten pounds occasionally, up to ten pounds frequently, stand and/or walk at least two hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in an eight hour workday." [AR at 13.]

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996) (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of noted value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering . . . [T]his is particularly true of witnesses who view the claimant on a daily basis. . ."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR 88-13; see Smolen, 80 F.3d at 1288. An ALJ may reject lay testimony only for specific reasons germane to each witness. See Regennitter v. Commissioner of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Smolen, 80 F.3d at 1289.

Although the ALJ in his decision noted that plaintiff lives with her husband and two children [AR at 12], and found that plaintiff has a medically determinable impairment that could produce pain or other symptoms [AR at 13], the ALJ failed to make any mention whatsoever of the testimony of plaintiff's husband, who vividly described plaintiff's pain, fatigue, and ability to concentrate and perform tasks. In the circumstances presented here, the Court finds that the neglected testimony is such that its consideration was warranted. It was not qualitatively duplicative of plaintiff's testimony; it came from the one individual who observes plaintiff's functional abilities most often; and pain is a significant factor in plaintiff's alleged inability to work, and the ALJ concluded that plaintiff's pain allegations exceeded the limitations reasonably expected from the medical evidence. [AR at 13.] Defendant's contention that this testimony in any

event does not establish disability is not persuasive. Joint Stipulation at 10-11. Rather, the limitations testified to by plaintiff's husband, if credited by the ALJ, could certainly have a substantial impact on the determination of disability. It is not enough for defendant to imply that since there was ample support for a conclusion of non-disability without the lay testimony (according to defendant), there would be sufficient evidence of non-disability even with that testimony. Joint Stipulation at 11. The ALJ should consider the issue of disability in light of all of the relevant evidence. Instead, he provided no reason to reject this testimony, let alone any specific reasons germane to this witness. Remand is warranted.

**B.    TREATING PHYSICIAN'S OPINION**

Plaintiff also contends that the ALJ did not discuss certain of the limitations imposed by Dr. R. Kurre in a Work Capacity Evaluation (Mental) dated January 15, 2005 [AR at 359-60], and only partially discussed the Global Assessment of Functioning[4] ("GAF") rating assigned by Dr. Edward D. Gibson following an initial psychiatric evaluation conducted in January, 2003. [AR at 191-92.] In that evaluation, Dr. Gibson arrived at a GAF score of "50 current and 50 best in the past year."[5] The ALJ discussed Dr. Gibson's report and his conclusions, as well as the GAF score of 50, which he indicated was "indicative of an individual with some serious symptoms." [AR at 11.] Plaintiff contends that the ALJ erred in not discussing "the past year GAF rating." Joint Stipulation at 4.

First, the Court agrees with defendant that Dr. Kurre's report, prepared in January, 2005, is not relevant to the issue of whether plaintiff was disabled prior to September 30, 2003, her date last insured. Indeed, it appears that Dr. Kurre did not even start seeing plaintiff as a patient until

---

[4]   A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM IV"), p. 32 (4th Ed. 2000).

[5]   A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM IV, at p. 34.

February, 2004 [AR at 387], which was also after plaintiff's date last insured. This evidence thus does nothing to assist in determining if plaintiff was disabled "prior to the date upon which her disability insured status expires." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). See Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir. 1990) (report finding disability based on evaluation conducted after date last insured rejected as not relevant), overruled in part on other grounds by Bunnell v. Sullivan, 894 F.2d 1059 (9th Cir. 1990).

Second, the ALJ sufficiently considered the various GAF scores. GAF scores are not definitive of actual limitations. While GAF scores are indicative of symptoms that may affect an individual's ability to function, they do not have a "direct correlation" to the Social Security severity requirements. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000)). Even the failure to mention a "'low' GAF score...does not in itself constitute reversible error." Alvarez v. Barnhart, 2002 WL 31466411, *8 (W.D. Tex. Oct. 2, 2002). Although "the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual," the ALJ is not obligated to rely on the score "at the exclusion of other medically reliable evidence." Id. Nor is the GAF score a standard typically used in the assessment of an individual's RFC assessment. Id. ("A GAF score is not a rating typically relied upon with respect to assessing an individual's RFC under the Act."). Rather, an assessment of the claimant's RFC "is based on the greatest capability of an individual to do work despite limitations." Id. The ALJ's evaluation of a claimant's RFC draws from "plaintiff's description of her limitations, including medical evidence, personal testimony, and testimony from other individual(s) or opinions from physicians." Id.

Here, the ALJ correctly reported Dr. Gibson's assigning of a GAF score of 50 to plaintiff, accurately commented that this indicated an individual with some serious symptoms, and examined various of plaintiff's other GAF scores as well. [AR at 11.] In addition, the Court notes that Dr. Gibson's GAF score was given following an initial evaluation. His comment that plaintiff's score was 50 at its highest point in the previous year does not appear to be based on any prior evaluations he conducted of plaintiff. Neither does plaintiff refer the Court to any evidence revealing that plaintiff in fact was evaluated with a lower score during the prior year, or how low

her score dropped, or what that score was. Indeed, Dr. Karen Chason conducted a psychiatric evaluation of plaintiff on November 26, 2002, i.e., during that prior year, and concluded that plaintiff's GAF score was about 65. [AR at 178.] Given the function of GAF scores in the disability determination, there was no error by the ALJ in not mentioning Dr. Gibson's speculative "past year" comment.

### VI.
### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.[6] See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to consider the testimony of plaintiff's husband. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 13, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6] As the ALJ's evaluation on remand of plaintiff's husband's testimony may impact on the necessity to utilize a vocational expert, the Court will not address this issue herein.